# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| JOANNE MORGAN, | ) | |
| Plaintiff | ) ) | Case No. 14 C 3774 |
| v. | ) ) ) | |
| CAROLYN COLVIN Commissioner of Social Security, | ) ) ) | Magistrate Judge Daniel G. Martin |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Joanne Morgan ("Plaintiff" or "Morgan") applied for disability insurance benefits and supplemental security income benefits under Title II and Title XVI of the Social Security Act. Her application was originally denied in an October 27, 2006 decision of Administrative Law Judge ("ALJ") Peter Caras. Morgan sought review in federal court. Magistrate Judge Sidney Schenkier denied Morgan's motion for summary judgment. *Morgan v. Astrue*, 2009 WL 650364 (N.D. Ill. March 9, 2009). The Seventh Circuit subsequently reversed Judge Schenkier's decision and remanded the case to the Commissioner for further consideration.[1] *Morgan v. Astrue*, 393 Fed.Appx. 371 (7th Cir. Aug. 2, 2010). Morgan's claims were assigned on remand to ALJ Karen Sayon. The ALJ found once again on August 13, 2012 that Morgan was not disabled. Morgan has now

---

[1] While Morgan's case was pending before the Seventh Circuit, she filed an additional application for Title II and Title XVI benefits. The Social Security Agency ("SSA") found that Morgan was disabled based on her second application beginning on July 19, 2009. The issues raised in Morgan's second set of disability claims are not at issue here; only that set of claims remanded by the Seventh Circuit remain in dispute. Morgan's alleged disability period in this case runs from January 15, 2004 through July 18, 2009.

appealed that decision to this Court in a motion for summary judgment.[2] The Commissioner has filed a cross motion. For the reasons stated below, Plaintiff's motion is denied. The Commissioner's motion is granted.

## I. Legal Standard

### A. The Social Security Administration Standard

In order to qualify for disability benefits, a claimant must demonstrate that he is disabled. An individual does so by showing that he cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 4243(d)(1)(A). Gainful activity is defined as "the kind of work usually done for pay or profit, whether or not a profit

---

[2] After seeking multiple extensions of time, Morgan's counsel Ashley Rose submitted an oversized brief that was also late. The Court noted that counsel had failed to seek leave to file such a lengthy brief despite the Court's clear order to the contrary. Nevertheless, the Court accepted it because counsel alleged he had been ill. [Dckt. 33, warning counsel that "further non-compliance with standing orders and filing deadlines will be carefully examined."]. Counsel then filed a *second* motion six weeks later that *again* violated the Court's briefing schedule. [Dckt. 34]. Attorney Rose never sought leave from the Court to file his second motion. The appropriate remedy would have been to strike the motion. Normally, this Court would not hesitate to do so. Since the Commissioner filed a timely response to the second motion, however, it would be counter-productive at this point to strike Plaintiff's superfluous brief. Doing so would only delay the proceedings. The Court would be required to allow the Commissioner to file a new or supplemental response to Rose's first motion that had been rendered moot by his second filing.

That does not, however, end the matter. Attorney Rose appears to have made a frequent habit of disregarding filing dates and other deadlines, both here and before other judges. His repeated and utter disregard for the rules governing orderly and timely submissions is appalling. At a certain point, even the most tolerant court must say "enough." Mr. Rose is advised *once again* that all parties are expected to follow the ordinary rules of litigation unless they seek leave to proceed otherwise. They are not at liberty to fashion their own briefing schedule. Enough, Mr. Rose. Enough.

2

is realized." 20 C.F.R. § 404.1572(b).

The Social Security Administration ("SSA") applies a five-step analysis to disability claims. See 20 C.F.R. § 404.1520. The SSA first considers whether the claimant has engaged in substantial gainful activity during the claimed period of disability. 20 C.F.R. § 404.1520(a)(4)(i). It then determines at Step 2 whether the claimant's physical or mental impairment is severe and meets the twelve-month durational requirement noted above. 20 C.F.R. § 404.1520(a)(4)(ii). At Step 3, the SSA compares the impairment (or combination of impairments) found at Step 2 to a list of impairments identified in the regulations ("the Listings"). The specific criteria that must be met to satisfy a Listing are described in Appendix 1 of the regulations. See 20 C.F.R. Pt. 404, Subpt. P, App. 1. If the claimant's impairments meet or "medically equal" a Listing, the individual is considered to be disabled, and the analysis concludes; if a Listing is not met, the analysis proceeds to Step 4. 20 C.F.R. § 404.1520(a)(4)(iii).

Before addressing the fourth step, the SSA must assess a claimant's residual functional capacity ("RFC"), which defines his exertional and non-exertional ability to work. The SSA then determines at the fourth step whether the claimant is able to engage in any of his past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant can do so, he is not disabled. Id. If the claimant cannot undertake past work, the SSA proceeds to Step 5 to determine whether a substantial number of jobs exist that the claimant can perform in light of his RFC, age, education, and work experience. An individual is not disabled if he can do work that is available under this standard. 20 C.F.R. § 404.1520(a)(4)(v).

### B. Standard of Review

A claimant who is found to be "not disabled" may challenge the Commissioner's final decision in federal court. Judicial review of an ALJ's decision is governed by 42 U.S.C. § 405(g), which provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence is "such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A court reviews the entire record, but it does not displace the ALJ's judgment by reweighing the facts or by making independent credibility determinations. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). Instead, the court looks at whether the ALJ articulated an "accurate and logical bridge" from the evidence to her conclusions. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). This requirement is designed to allow a reviewing court to "assess the validity of the agency's ultimate findings and afford a claimant meaningful judicial review." *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). Thus, even if reasonable minds could differ as to whether the claimant is disabled, courts will affirm a decision if the ALJ's opinion is adequately explained and supported by substantial evidence. *Elder*, 529 F.3d at 413 (citation omitted).

### II. Background

The Court does not review the facts or the medical record except as necessary in the discussion below. Both the Seventh Circuit and Judge Schenkier described the voluminous record in detail as it existed at the time of the earlier review. On remand, the ALJ supplemented the earlier record in several ways. Additional medical records were

4

included. An interrogatory from psychologist Dr. William Nordbrock was obtained. The ALJ also received testimony at the administrative hearing from medical expert Dr. Sheldon Slodki.

Briefly stated, Morgan claims that she is unable to work due to pain that stems from a back disorder, as well symptoms that result from depression and anxiety. She suffered from Guillain-Barre syndrome earlier in life, which Morgan claims has resulted in physical and mental limitations. She also suffered from some blunt trauma when she was struck by a cart at Menard's. MRI tests showed disc bulges and degenerative changes of the L3 through S1 vertebrae with no herniation, central canal stenosis, or neural foraminal stenosis.

Applying the familiar five-step analytic procedure, ALJ Sayon found at Step 1 that Morgan had not engaged in substantial gainful activity from her onset date of January 15, 2004 through July 18, 2009. Morgan's severe impairments at Step 2 were alcohol dependence, generalized anxiety disorder, depression, history of Guillain-Barre syndrome, degenerative disc disease of the lumbar spine, hypothyroidism, hypertension, gastroesophageal reflux disease ("GERD"), and obesity. None of these impairments met or medically equaled a listing at Step 3, either singly or in combination. Before moving to Step 4, the ALJ found that Morgan was not entirely credible concerning the severity of her symptoms. The ALJ also concluded that Morgan had the residual functional capacity ("RFC") to carry out light work with various non-exertional limitations. Morgan could not perform her past relevant work at Step 4. At Step 5 the ALJ relied on the testimony of a vocational expert ("VE") to find that jobs existed in the national economy that Morgan could perform. She therefore concluded that Morgan was not disabled.

### III. **Discussion**

Morgan challenges the ALJ's decision on four grounds. She claims that the ALJ (1) erroneously addressed the listing issue at Step 3, (2) incorrectly assessed her credibility, (3) did not adequately address the RFC, and (4) erred at Step 5. The Court addresses each issue in turn. "The plaintiff bears the burden of proof through step four; if it is met, the burden shifts at step five to the Commissioner, who must present evidence establishing that the plaintiff possesses the [RFC] to perform work that exists in a significant quantity in the national economy." *Thorps v. Astrue*, 873 F. Supp.2d 995, 1004 (N.D. Ill. 2012).

### A. **The Listing Issue**

At Step 3 an ALJ must consider whether a claimant's impairments meet or medically equal a listed impairment, either singly or in combination. An ALJ should identify the listing by name and offer more than a perfunctory discussion. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004). He must also obtain the opinion of a medical expert on the issue. *Id*.

Morgan claims that the ALJ failed to meet this standard concerning her lower back pain. This lacks any merit. The ALJ complied with all of *Barnett*'s requirements. She identified the listing at issue as listing 1.04 (disorders of the spine). Contrary to Plaintiff's claim, the ALJ not only said that Plaintiff's impairments did not meet *or* equal a listing, she also noted that "no acceptable medical source has mentioned findings equivalent to the criteria of any listed impairment, individually or in combination." (R. 376). She pointed out that the medical expert Dr. Slodki testified at the hearing. Dr. Slodki told the ALJ that

6

Morgan's physical condition "does not meet or equal a listing." (R. 1292). This satisfies the ALJ's Step 3 obligations. Plaintiff has not pointed out any evidence showing that she meets or equals listing 1.04.

Morgan also claims that the ALJ did not meet the requisite standard concerning her mental impairments. This, too, is without merit. The ALJ identified listings 12.04 (affective disorders), 12.06 (anxiety related disorders), and 12.09 (substance addiction disorders). Morgan does not challenge the last of these categories. Instead, she argues at some length that the ALJ erred by only discussing the B criteria while overlooking the A criteria of listings 12.04 and 12.06. Each listing contains its own unique criteria under paragraph A. They share identical criteria under paragraph B. A claimant must show under paragraph B the existence of at least two of the following: marked restrictions in daily living, social functioning, concentration, or repeated episodes of decompensation. A claimant must satisfy both the A and B criteria under listings 12.04 and 12.06. In the alternative, a claimant can meet the criteria of Paragraph C standing alone. Morgan does not dispute that she did not meet the C factors.

It is true that ALJ Sayon only discussed the paragraph B factors for listing 12.04 and 12.06. The Commissioner claims that she assumed, without stating so, that Morgan met the A criteria for both listings. That may be, as ALJ Caras had earlier determined that Morgan satisfied the A factors for listing 12.04 and 12.06. (R. 27). The important point, however, is that a claimant can meet listing 12.04 or 12.06 only if she satisfies both paragraphs A and B. If she does not meet the paragraph B criteria, she necessarily cannot meet the listings at all. The determinative issue in this case, therefore, is not whether Morgan met the paragraph A issues, but whether substantial evidence supports the ALJ's

7

finding that she did not satisfy the B criteria. If it does not, then Morgan could not have met listings 12.04 or 12.06 whether she satisfied the A criteria or not.

The record fully supports the ALJ's finding. She said that she relied on the two state-agency physicians who issued reports in this case, Dr. Carl Hermsmeyer and Dr. William Nordbrock. Dr. Hermsmeyer found on April 12, 2004 that Plaintiff only had mild limitations in daily living, with moderate limitations in both social functioning and concentration. (R. 229). Dr. Nordbrock said in June 2012 that Plaintiff only had mild restrictions in daily living and social functioning, with moderate limitations in concentration. (R. 361). The experts' conclusions fully support the ALJ's Step 3 decision concerning the paragraph B factors. Even if the ALJ had found that Morgan satisfied the A criteria, therefore, she could have relied on the B criteria to conclude that Morgan did not meet listings 12.04 or 12.06. As noted earlier, Plaintiff has not cited evidence or explained why she equaled the listings.

Morgan points out that she sought treatment from psychiatrist Dr. Joseph Chuprevich. Plaintiff argues that the ALJ erroneously failed to address the treating psychiatrist's findings, particularly as they concerned her suicide attempt and suicidal tendencies. That is untrue. The ALJ discussed Dr. Chuprevich's treatment notes. (R. 380). She also described the fact that Morgan had tried to kill herself by taking 50 to 60 pills and that she had attempted suicide three times in the past. The ALJ concluded, however, that Dr. Chuprevich's notes did not indicate the level of severity that Morgan claims she experienced. The ALJ specifically cited portions of the treatment notes to support that conclusion. She also relied on the report of psychologist Dr. Nordbrock, who reviewed Dr. Chuprevich's notes. Based on his review of the entire record, Dr. Nordbrook

informed the ALJ that Morgan did not meet or equal a listing for the relevant period. (R. 361). The ALJ was entitled to rely on the expert's conclusion for the Step 3 finding.

The Court recognizes that the ALJ did not identify every point that Morgan relies on in her motion. She was not required to do so. *Mueller v. Astrue*, 860 F. Supp.2d 615, 630 (N.D. Ill. 2012) (stating that an "ALJ need not address every piece of evidence"). An ALJ only needs to provide a discussion that is not perfunctory and does not lack "evidentiary support [that is] so poorly articulated as to prevent meaningful review." *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). The ALJ identified the relevant listings, relied on expert opinions, and provided more than a perfunctory analysis of the relevant issues. That is all that she was required to do. The Commissioner's motion is granted on the Step 3 issue.

### B. The Credibility Issue

Morgan challenges the ALJ's conclusion that her testimony was not fully credible. The ALJ said she reached her credibility decision for the following reasons: "[I]n addition to the medical evidence, I have considered the other factors enumerated in SSR 96-7p in evaluating the intensity, persistence and limiting effects of the claimant's symptoms." (R. 383). Morgan only minimally challenges this comment. She argues that the first part of the ALJ's statement erred by not citing examples of the medical record. She also claims that the ALJ failed to explain what it was about Plaintiff's activities of daily living ("ADLs") that failed to support Morgan's claims. An ALJ's credibility analysis is entitled to considerable deference. It is erroneous only when it lacks "any explanation or support" and is "patently wrong." *Simila v. Astrue*, 573 F.3d 503, 507 (7th Cir. 2009). That requires a claimant to meet a "high burden." *Turner v. Astrue*, 390 Fed.Appx. 581, 587 (7th Cir. 2010).

9

Morgan has not met this standard in contesting the ALJ's credibility discussion. She claims that the ALJ did not "follow the requirements of SSR 96-7p." (Dckt. 35 at 13). Morgan is presumably suggesting that the ALJ did not discuss each of the credibility factors that are outlined in that Ruling. It is well-established, however, that she did not have to explicitly identify and discuss each separate factor. "SSR 96-7p . . . does not require an ALJ to analyze and elaborate on each of the seven factors set forth when making a credibility determination." *Clay v. Apfel*, 64 F. Supp.2d 774, 781 (N.D. Ill. 1999).

Plaintiff appears to assume that the ALJ's only statement on the issue was the quotation noted above: "[I]n addition to the medical evidence, I have considered the other factors" under SSR 96-7p. That misreads the ALJ's decision, which must always be construed as a whole. *Rice v. Barnhart*, 384 F.3d 363, 370 n.5 (7th Cir. 2004). The decision shows that this comment summarized a lengthy and thorough analysis of the medical record. The ALJ noted, for example, contradictions in Plaintiff's testimony about her daily activities. (R. 376). She pointed out that Morgan testified that "she could stand for half a day at a time, walk three blocks, and sit for one hour at a time. She could lift 20 pounds." (R. 379). Morgan had no significant psychiatric treatment prior to 2008. (R. 379). Mental health records noted euthymic and stable moods. (R. 380). Morgan failed to attend a number of her scheduled appointments. (R. 381). In considering the last point, the ALJ properly accounted for the fact that an inability to afford treatment interrupted Plaintiff's treatment, and that mental health can also affect a claimant's ability to seek treatment. (R. 381). SSR 96-7p advises an ALJ to consider all of these issues that the ALJ cited. Morgan has made no showing of why the ALJ's discussion of these topics was inadequate.

Plaintiff cites two authorities to attack the credibility assessment. Relying on *Ridinger v. Astrue*, 589 F. Supp.2d 995, 1002 (N.D. Ill. 2008), Morgan states that the ALJ should have ascertained the exertional and non-exertional requirements of each of her ADLs as part of a credibility analysis. However, the part of *Ridinger* that Morgan cites does not even address credibility, much less state that an ALJ must make such elaborate assessments when addressing the relationship between ADLs and credibility. The regulations and SSR 96-7p do not require an ALJ to make the kind of detailed assessments that Morgan says are necessary when an ALJ evaluates a claimant's credibility.

Morgan also refers the Court to SSR 83-10 at page 5. Ruling 83-10 addresses the Medical-Vocational Rules concerning the determination of a claimant's ability to do other work. Plaintiff's specific citation concerns the exertional activity elements for light, medium, and heavy work. It says nothing about credibility. Assessing a claimant's credibility is not the same thing as determining her RFC, though they are related. *See Outlaw v. Astrue*, 412 Fed.Appx. 894, 897 (7th Cir. 2011) ("RFC determinations are inherently intertwined with matters of credibility[.]"). Each has its own set of directives. SSR 96-7p concerns credibility. SSR 96-8p addresses RFC. Morgan fails to cite any authority to support her position, or to explain how SSR 96-7p or SSR 83-10 show error in the ALJ's discussion.

Plaintiff also briefly contends that the ALJ improperly considered her ADLs in finding that she was not fully credible. Her claims are for the most part conclusory. The ALJ relied on Morgan's ADLs in this case because Plaintiff told the ALJ that she could do all of her daily tasks such as cooking and cleaning as long as she took sufficient time to do so. (R. 1277, "But if you give me time, like I said, give me my own pace, and if I can go slow, then

I can get them done."). The ALJ noted that she engaged in exercise classes several days a week and could walk up to four blocks. (R. 383). It is true that the ALJ could have discussed in greater detail how these activities showed that Morgan was not fully credible. But the ADLs were only one part of what the ALJ considered on this issue. A credibility assessment should not be overturned "as long as it has some support in the record." *Bragg v. Astrue*, 686 F. Supp.2d 803, 815 (N.D. Ill. 2010) (citing *Dixon v. Massanari*, 270 F.3d 1171, 1178-79 (7th Cir. 2001)). ALJ Sayon properly cited the medical record and explained her reasoning in at least minimal form. Given the deference that such assessments are owed, Morgan has not shown why the credibility finding in this case was patently wrong. *See Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000) (instructing courts to "give the opinion a commonsensical reading rather than nitpicking at it") (internal quotes and citation omitted). The Commissioner's motion is granted on this issue.

### C. The RFC Issue

The ALJ found that Morgan had the RFC to perform light work involving "only simple instructions; only routine tasks; only simple work-related decisions, and no public interaction. She could not meet fast-paced production requirements." (R. 378). Morgan challenges this finding by arguing that the ALJ failed to carry out a function-by-function assessment of her work ability. Courts have repeatedly instructed litigants that such an assessment is not required. Indeed, this Court has previously cautioned Plaintiff's counsel on this topic at some length. *Mangan v. Colvin*, 2014 WL 1908937, at *8 (N.D. Ill. May 13, 2014) (citing cases).

Morgan's substantive position is difficult to follow. She argues, for example, that the

ALJ should have considered her suicide attempt and included a limitation related to it in his hypothetical question to the VE. This fails on several grounds. A suicide attempt is not, at least in itself, ordinarily a normal work-related restriction. This Court is unfamiliar with hypothetical questions that ask a VE what work would be available for a claimant who may try to commit suicide. A claimant with such a severe work restriction would presumably be disabled, thereby making submitting questions to the VE unnecessary. At any rate, there is no reason why the ALJ in this case was required to ask the VE what jobs would be available if Plaintiff was suicidal. Part of the problem with this claim is that Morgan essentially conflates questions given to the VE – a Step 5 issue – with the RFC assessment. Her real argument appears to be that the ALJ should have reached a more restrictive psychological RFC assessment. However, she fails to explain why the ALJ erred by relying on the psychological experts or what evidence Morgan claims supports her position.

Morgan's only argument on this issue is that the ALJ failed to explain why she did not consider the Psychiatric Review Technique ("PRT") and RFC given by psychological expert Dr. Phyllis Brister. The Court is unable to follow the logic of Morgan's reliance on this expert. Dr. Brister stood alone among the experts in finding that Morgan's only mental impairment was substance abuse. She did not think that Plaintiff even suffered from the depression and anxiety that every other expert – and the ALJ herself – thought were severe impairments. (R. 560). Moreover, Dr. Brister did not think that Morgan was as limited as other experts concluded. She assessed a mild limitation in Morgan's social functioning; state-agency expert Dr. Hermsmeyer thought it deserved the more serious limitation of a moderate restriction. (R. 229, 569).

In essence, Morgan claims that the ALJ erred by not discussing a medical report that found Morgan to be less impaired than the ALJ concluded. That makes no sense. Even if it was erroneous, moreover, it amounts to only harmless error. Harmless error exists when "it is predictable with great confidence that the agency will reinstate its decision on remand because the decision is overwhelmingly supported by the record." *Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010). The ALJ would almost certainly give little weight to Dr. Brister's report on remand if she were required to discuss it in the way that Morgan claims. Morgan cannot seize on one finding in Dr. Brister's RFC to support remand when the ALJ could not have reasonably given significant weight to the report as a whole.

The ALJ's RFC analysis relied on the PRT and the accompanying RFC that state-agency psychologist Dr. Hermsmeyer issued. Dr. Hermsmeyer found, in part, that Morgan did not have significant limitations in her ability to work around others. That coincided with Dr. Nordbrock's findings that Morgan would only experience mild restrictions in her interactions with co-workers. (R. 365). Notably, Morgan does not challenge the ALJ's decision to give "great" weight to these two state-agency experts. It is difficult to understand how she can challenge the RFC without doing so.

Morgan also disputes the RFC because the ALJ noted that she had failed to attend several of her mental health appointments. That is, of course, more relevant to credibility than to the RFC analysis. That said, Morgan's claim fails on at least two grounds. First, the ALJ went on to note that, even when Morgan did show up for appointments, the treatment notes do not indicate limitations that are inconsistent with what the ALJ assessed. As noted above, the ALJ correctly considered the additional fact that Morgan sometimes lacked sufficient funds for treatment, and that her mental health issues may

themselves have restricted her ability to comply fully with treatment. (R. 381).

Second, Plaintiff erroneously relies on the fact that she attended psychiatric sessions with her treating psychiatrist to dispute the ALJ's reasoning. This fails to demonstrate any error. The ALJ was well aware that Morgan saw Dr. Chuprevich. She discussed his treatment notes in some detail. (R. 380). Morgan claims that the ALJ "played doctor" by substituting her own interpretations for what Dr. Chuprevich actually said. However, she provides no analysis at all of this issue, failing even to point to a single comment that Dr. Chuprevich made. The Court will not carry out an analysis that Plaintiff has not bothered to identify with any specificity. *See Kyles v. J.K. Guardian Sec. Servs.*, 236 F.R.D. 400, 402 (N.D. Ill. 2006) ("[T]he Seventh Circuit has stressed time and time again that it is not a judge's responsibility to research and construct the parties' arguments.") (citations omitted). Generalized and conclusory claims cannot substitute for a reasoned argument.

Finally, Morgan disputes the RFC based on two medical notes in the record. The first is from rehabilitation medicine specialist Dr. Thomas Syzmke. Dr. Syzmke noted on September 7, 2006 that Morgan was experiencing persistent weakness in her shoulder. Morgan claims that this may have been related to her earlier condition of Guillain-Barre syndrome. She argues that the ALJ erred by failing to account for the restrictions in her upper body. Plaintiff misrepresents the full medical record on this issue. Morgan went into therapy after the September 2006 meeting with Dr. Syzmke. Contrary to her claim, the doctor subsequently noted in November 2006 that Morgan showed "no weakness in either her upper or lower limbs." (R. 544). As the ALJ herself stated, Dr. Syzmke concluded that Plaintiff was "a new woman." (R. 382). Moreover, the ALJ properly relied on the expert

testimony of Dr. Slodki. Dr. Slodki stated that Morgan had *no* significant neurological anomaly that stemmed from Guillain-Barre syndrome. Nor did she have any restrictions in her physical movement. (R. 1290-95). Morgan does not challenge the ALJ's reliance on Dr. Slodki.

Morgan also points to a treatment note of Dr. W.D. Tobin that she claims was issued on December 27, 2008. This requires no comment. Dr. Tobin's treatment note dates from December 1978 – 30 years earlier than the time that Morgan claims it was issued. (R. 203). The Commissioner's motion is granted on the RFC issue.

### D.     The Step 5 Issue

Finally, Morgan claims that the ALJ erred by not including her obesity in the hypothetical questions posed to the VE at the administrative hearing. Questions submitted to a VE must include all limitations supported by the medical evidence. *Young v. Barnhart*, 362 F.3d 995, 1003 (7th Cir. 2004). Without making any reference to the medical record, Morgan claims that her obesity could have limited her ability to perform light work. Setting aside the fact that this is an RFC argument that Morgan should have addressed before moving to Step 5, Plaintiff has not shown any error. The ALJ discussed obesity in her decision. (R. 376). Morgan claims that the ALJ erred by not considering obesity's effect on her depression and anxiety. She fails, however, to cite any evidence that such a connection even exists. No medical expert said that it did. Equally important, Morgan does address how her obesity is related to either her physical or mental limitations. She did not even claim at the administrative hearing that her obesity had any effect on these limitations.

Even if the ALJ erred in not considering the issue more fully, Morgan fails to

demonstrate why it amounts to more than harmless error. An ALJ's oversight on obesity is harmless if he adopts the limitations outlined by a medical specialist who considered them, or when the claimant fails to specify how her obesity impairs her work ability. *See Prochaska v. Barnhart*, 454 F.3d 731, 736-37 (7th Cir. 2006). Morgan fails to meet the second of these criteria for the reasons stated above. As for the first, Dr. Slodki told the ALJ that Morgan was obese. (R. 1290-91). His RFC assessment took that into account. The ALJ was entitled to rely on the expert's testimony. If Morgan intended to attack this line of evidence, she was obligated to explain why the ALJ erred by giving great weight to Dr. Slodki. However, she is silent on the issue. The Commissioner's motion is granted on the Step 5 issue.

## IV. Conclusion

For all these reasons, Plaintiff's motion for summary judgment [34] is denied. The Commissioner's motion [39] is granted. The ALJ's decision is affirmed.

ENTER:

*Daniel G. Martin*

_____
DANIEL G. MARTIN
United States Magistrate Judge

Dated: August 28, 2015.